UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-306-H
CONSOLIDATED WITH 3:04CV-365-H

RACHEL RENEE JESSIE                                                    PLAINTIFF

V.

BULLITT COUNTY BOARD OF EDUCATION, et al.                             DEFENDANTS

**MEMORANDUM OPINION**

In this case the party styled Defendant, Bullitt County Board of Education and Bullitt County Public Schools ("Bullitt County") takes an appeal from the June 10, 2004, decision of the Exceptional Children Appeals Board ("ECAB") under the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA" or the "Act").[1]  Bullitt County seeks reversal of the ECAB decision that Rachel Jessie ("Ms. Jessie") is entitled to two years of compensatory education due to Bullitt County's failure to provide her with a fair and appropriate public education ("FAPE") for the years 1999-2000 and 2002-2003.

This case presents a number of difficult issues that do not lend themselves to a certain judgment.  The Court has thoroughly reviewed the record, including the entire hearing transcript and all of the exhibits.  The Court has benefitted from excellent presentations by counsel at a conference.  The Court concludes that the evidence does not support all of the relief granted by

---

[1] Even though the style suggests that Ms. Jessie is the Plaintiff, the Court has already dismissed Ms. Jessie's appeal from the Exceptional Children Appeals Board and has determined several other preliminary issues. Therefore, the only remaining issues on appeal in this consolidated case are those brought by Bullitt County. Plaintiff has asserted several other independent claims that are not the subject of the pending motion. Those claims remain unaffected by this ruling.

the hearing officer.

I.

The procedural facts leading to this appeal are relatively straightforward.  The details of Ms. Jessie's four year education experience in the Bullitt County schools are more complicated. The Court will cover the procedural history here and the educational details as needed throughout the opinion.

Ms. Jessie enrolled as a student at Bullitt East High School in the fall of 1999.  Her testing and evaluations did not entitle her to services under IDEA.  However, because she received specialized help at her previous school, the ARC agreed that Ms. Jessie was entitled to additional services in reading comprehension.[2]  Throughout her schooling, Bullitt County treated Ms. Jessie as entitled to procedures and services required by IDEA.  In the spring of 2003, she graduated with a regular high school diploma with the rest of her class.

On June 2, 2003, just prior to Ms. Jessie's graduation from high school, her mother asked Bullitt County for a due process hearing on behalf of her daughter.  Ultimately, the hearing began on September 22, 2003, and lasted over six days.  The hearing officer handed down a thirty-four (34) page decision on January 20, 2004, awarding Ms. Jessie two years of compensatory education for Bullitt County's failure to provide a FAPE for Ms. Jessie's freshman and senior years, 1999-2000 and 2002-2003.  Specifically, the hearing officer held

---

[2] Ms. Jessie was later tested for and provided speech services.  Later, her specialized services appear to have been expanded to include math.  In her testimony, Mrs. Jessie asserts that she did not agree with the limited referral in reading.  However, the record of ARC meetings does not reflect the disagreement and Mrs. Jessie never made a formal or written objection.

An "admissions and release committee" or ARC is a group of individuals responsible for developing, reviewing or revising an individual education program ("IEP") for a child with a disability.  707 KAR 1:280.

2

1.      Rachel was denied FAPE by deficient PLEP's (present
        levels of performance) in academic and vocational
        functioning PLEP's, deficient annual goals and short term
        objectives for academic years 1999-2000 and 2002-2003,
        and a deficient transition plan.

2.      Bullitt County denied FAPE by improperly terminating
        speech-language related services and by not providing
        assistive technology related services as specified in the
        IEPs with the exception of one teacher and its good faith
        attempts to secure a scanner.

3.      Based upon the above, Rachel failed to benefit from her
        education for the major part of her high school career.

4.      Rachel contended she is entitled to four (4) years of
        compensatory services, but failed to provide factual support
        for this conclusion.  Bullitt County did not completely fail
        in its duty to provide FAPE.

5.      Bullitt County is to provide two (2) years compensatory
        services which is to include specially designed instruction
        to address basic reading, reading comprehension, written
        expression, and vocational functioning deficits, an
        appropriate transition plan and speech-language services.

Thereafter, on February 19, 2004, Bullitt County perfected its appeal to the Kentucky

Department of Education.  The ECAB filed a comprehensive forty-nine (49) page opinion on

June 10, 2004, affirming the decision of the hearing officer.  That opinion concluded and

directed that:

1.      The District shall convene a meeting of the ARC for the
        student within seven days of the effective date of this
        appellate Decision Order to address the matters contained
        herein.

2.      The student is awarded two years of compensatory
        education at the expense of the District.

3.      The ARC shall prepare a plan for providing compensatory
        education services to the student.  This plan shall address
        the student's needs in the areas of basic reading, reading
        comprehension, written expression, vocational functioning
        deficient, a transition plan, and speech-language services.
        This plan shall be provided to the student and shall be

3

                      included in her special education folder.  The District shall
                      be responsible for insuring that this plan is carried out.

4.        The ARC shall meet as required to review and modify this
        compensatory education plan.  These meetings must occur
        at least once every twelve months until such time as the
        ARC determines that the award of compensatory education
        is fulfilled.

Bullitt County disagrees with virtually every aspect of the decisions of the hearing officer and the ECAB.

## II.

IDEA requires local school districts receiving federal funding to assure "all children with disabilities the right to a free and appropriate public education."  20 U.S.C. § 1412(1).  The Act addresses the special education needs of children who have physical, cognitive, serious emotional, or other developmental disabilities, by requiring that a child's teacher and parent prepare an "individualized education plan."  *Id.* at § 1401(18).  An IEP is a written statement of a child's special education program and placement that, in turn, secured by a procedural safeguards outlined in the Act.  *Id.* at § 1415.  The Act entitles parents to challenge the accuracy or implementation of an IEP through an administrative due process hearing.  Parents may appeal to the state education agency that oversees implementation of IEPs.  *Id.* at § 1415(b)(2), (c).  Parties aggrieved by a final administrative decision have the right to bring a civil action in federal court.  *Id.* at § 1415(b)(2).

In an action under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B).  *See Deal v. Hamilton County Bd. of*

4

*Educ.*, 392 F.3d 840, 849 (6th Cir. 2004).  On the other hand, the Court should give due weight to the state administrative proceedings when reaching its decision.  *Roncker on Behalf of Roncker v. Walter*, 700 F.2d 1058 (6th Cir. 1983).  Because these issues fall outside the expertise of federal courts, educators are entitled to some deference on matters of substance.  *Doe v. Bd. of Education of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir. 1993).  This process amounts to a "modified *de novo*" standard of review in which a district court makes findings of fact and law from evidence contained in the full record.  *Deal*, 392 F.3d at 850.  The Court has received and reviewed the transcript of the administrative proceedings below as well as the exhibits admitted into evidence.

In its appeal, Bullitt County has set forth fourteen (14) separate reasons why the Court should reverse the decision of the ECAB.  Whether the Court considers Bullitt County's objections separately or cumulatively, there are two parts to a court's overall inquiry.  First, the court must determine whether the school system has complied with the procedures set forth in the IDEA.  *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982).  Second, the court must assess whether the IEP was reasonably calculated to enable the child to receive educational benefits.  *Rowley*, 458 U.S. at 206-07.  Parties challenging an IEP have the burden of proving by a preponderance of the evidence that the IEP devised by the school district is inappropriate.  *See Deal*, 392 F.3d at 854.

On procedural matters, a court should "strictly review an IEP for procedural compliance," although technical deviations will not render an IEP invalid.  *Deal*, 392 F.3d at 854 (quoting *Dong ex rel. Dong v. Bd. of the Rochester Cmty. Sch.*, 197 F.3d 793, 800 (6th Cir. 1999)); *also see Cleveland Heights-Univ. Heights City Sch.Dist. v. Boss ex rel. Boss,* 144 F.3d

391, 398 (6th Cir. 1998) (noting that "minor technical violations may be excused").  A finding of

procedural violations does not necessarily entitle appellants to relief.  *Id.* (quoting *Knable*, 238

F.3d at 764). Only if a procedural violation has resulted in substantive harm, and thus constitutes

a denial of a FAPE, may relief be granted.  *Id.*

On substantive compliance, "[t]he 'preponderance of the evidence' language in the

[IDEA] 'is by no means an invitation to the courts to substitute their own notions of sound

educational policy for those of the school authorities which they review.'" *Deal*, 392 F.3d 854

(quoting *Rowley*, 458 U.S. at 206).  The Supreme Court has cautioned,

> In assuring that the requirements of the Act have been met, courts
> must be careful to avoid imposing their view of preferable
> educational methods upon the States.  The primary responsibility
> for formulating the education to be accorded a handicapped child,
> and for choosing the educational method most suitable to the
> child's needs, was left by the Act to state and local educational
> agencies in cooperation with the parents or guardian of the child.

*Rowley*, 458 U.S. at 207.

The Supreme Court has spoken on the level of education that the states are required to

provide to disabled children:

> Implicit in the congressional purpose of providing access to a "free
> appropriate public education" is the requirement that the education
> to which access is provided be sufficient to confer some
> educational benefit upon the handicapped child....  We therefore
> conclude that the "basic floor of opportunity" provided by the Act
> consists of access to specialized instruction and related services
> which are individually designed to provide educational benefit to
> the handicapped child.

*Rowley*, 458 U.S. at 200-01.  The Supreme Court explicitly rejected the argument that school

districts are required to provide services "sufficient to maximize each child's potential

commensurate with the opportunity provided other children."  *Id.* at 198.

6

III.

The procedural requirements of IDEA are vital to assure that parents remain involved in the process. The hearing officer made the following finding on that issue:

> The LEA's witnesses, however, testified that the petitioner's progress was reviewed at each ARC meeting and was mailed home with report cards. (*See*, *e.g.* TE III, p. 52-54). While the hearing officer finds the LEA's evidence more convincing on this score, the data maintained by the LEA was sporadic and insufficient to meet the requirements of the IDEA for the 1999-2000 year and did not comply with the IDEA for the 2002-2003 academic year.

In other words, the hearing officer appeared to believe that Bullitt County complied, but that it kept inadequate records of it. In *Doe*, the Sixth Circuit also suggested that actual compliance with procedural requirements is more important than technical compliance:

> Adequate parental involvement and participation in formulating an IEP, not adherence to the laundry list of items given in section 1401(19), appear to be the Court's primary concern in requiring that procedures be strictly followed.

*Doe*, 898 F.2d at 1191(commenting on the Supreme Court's decision in *Rowley*, 458 U.S. at 205-207).

Significantly, Bullitt County conducted fifteen (15) ARCs throughout Ms. Jessie's high school tenure. The parents attended each of these meetings as did many of the teachers responsible for Ms. Jessie's schooling and its assessment. At various times in their testimony Ms. Jessie's parents say that Bullitt County failed to provide notice of rights, failed to discuss various aspects of their child's educational plan or that the parents disagreed with the results. The written minutes of ARC and other meetings demonstrate quite a different story. The written record reflects discussion and agreement with respect to most matters. Similarly, when the parents say that they cannot remember the occurrence of an event several years ago, the written

7

record of that event should be conclusive unless the hearing officer has reason to believe it is falsified.

The evidence overwhelmingly shows that actual parental involvement did take place and that the most important kind of procedural protections were provided. The hearing officer made no specific findings regarding procedural noncompliance with IDEA and this Court agrees that none are shown.

IV.

There are a number of other issues that could impact the hearing officer's decision that Bullitt County has denied a FAPE to one of its students. Each could be a factor in the Court's final decision; none are conclusive. The Court will discuss these separately.

A.

Bullitt County argues that Ms. Jessie is not entitled to compensatory education because she graduated with a regular high school diploma. It argues that the fact of graduation is sufficient to establish Ms. Jessie's access to and opportunity to learn the same material as non-disabled students. Bullitt County argues that IDEA's primary purpose is to allow all students equal access to schooling and that the Act does not impose the requirement that students maximize their potential. This is a powerful and appealing argument. Nevertheless, the Court does not view the fact of Ms. Jessie's graduation to be conclusive proof that Bullitt County has complied with IDEA.

The Sixth Circuit has given some attention to this issue in *Doe v. Defendant I*, 898 F.2d 1186 (6th Cir. 1990). This Court surmises the Circuit's view to be that where a covered student (1) receives instruction in a regular classroom, (2) is graded according to normal criteria, (3)

8

those grades were known to parents, (4) the student is passed from grade to grade, (5) parents participated in the development of the IEP and (6) the school system complies with the existing IEP, then the Court may consider these important factors in determining whether the child has received a meaningful educational benefit. *Id.* at 1189-1191. This analysis amplifies the Supreme Court's suggestion that "achievement of passing marks and advancement from grade to grade will be an important factor in determining educational benefit." 458 U.S. at 207 n. 28.

Test results suggest that Ms. Jessie's academic performance may not have improved. Indeed, probably for a variety of reasons, a comparison of Ms. Jessie's test scores suggest that she may have made little or no academic progress during her four years in the Bullitt County schools. Yet, the record is also clear that Ms. Jessie achieved sufficient success to graduate from high school. Ms. Jessie did receive her high school education in general classrooms, though she received a different type of instruction with additional help from collaborating special education teachers. Ms. Jessie does not contend that her degree was either a sham or unearned. Neither the hearing officer nor the Court can find evidence that the degree was undeserved. For a student to graduate from high school in a regular classroom setting is certainly some strong evidence that the student received a FAPE. However, it is not conclusive as a matter of law.

B.

Bullitt County argues that Plaintiff's dismissal from speech therapy services was appropriate and there is no need for Bullitt County to provide compensatory education for speech therapy.

Bullitt County says that Ms. Jessie had communication difficulties but not a disability. After Ms. Jessie received a high score on a language related test, the ARC determined that

speech/language services were no longer necessary.  The hearing officer and the ECAB say that Bullitt County was completely ignorant of its responsibilities for monitoring Ms. Jessie's progress.  They suggest that Ms. Jessie made no progress that justified removal of the services.

The hearing officer's conclusions seem based upon a complete disbelief of Bullitt County's testimony and evidence.  The hearing officer also disbelieves the test score and suggests that Bullitt County should have been similarly skeptical.  She cites the transition plan statement as evidence that speech/language services were necessary.

Bullitt County did not present sufficient evidence to overcome the hearing officer's informed assessment.  The Court defers to the judgment of the hearing officer on her understanding of test results and her assessment of witness credibility.  The speech therapy was terminated.  The evidence supports the conclusion that reliance upon one test, without more, was improper.  This evidence must be balanced with others to determine whether Bullitt County did not provide a FAPE.

C.

Bullitt County argues that it did provide assistive technology to Plaintiff as required in her IEP and that it implemented Plaintiff's IEP in good faith.

Reading both sides of the issue suggests that the parties are discussing two entirely different circumstances.  The hearing officer and the ECAB found a blatant lack of use: only two texts on tape throughout high school.  Bullitt County cites other contrary testimony.  The hearing officer simply chose to disbelieve Bullitt County's evidence.  The ECAB suggests that reading aloud in class is an inappropriate substitute for taped books.  That may be true.  However, Bullitt County does not make that argument.  It merely says that because many of the classes conducted

10

their work verbally, assistive technology was unnecessary to help her reading in classroom activities.

The Court concludes that Bullitt County failed to present a comprehensive and persuasive case that it provided appropriate and timely assistive technology. Bullitt County's evidence can best be termed anecdotal and uneven. It is not enough to carry its burden. The hearing officer had sufficient grounds to reject it.

D.

Bullitt County argues that it provided Plaintiff with a sufficient transition plan and that the hearing officer's finding to the contrary is without support in the evidence. The hearing officer based her conclusions upon the failure to find a written transition service plan.

The Sixth Circuit has recently emphasized the importance of services "designed to meet [a special education student's] unique needs and prepare them for employment and independent living." *Deal*, 392 F.3d at 864 (quoting 20 U.S.C. § 1400(d)(1)(A)). The Court spoke of "providing meaningful educational benefit toward the goal of self-sufficiency, especially where self-sufficiency is a realistic goal for a particular child." *Id.* These references highlight the importance of transition services.

Several witnesses testified about their personal involvement in Ms. Jessie's transition from high school to college. They ensured that she achieved the necessary credits; that she would contact disability resource centers at any college; and, according to the testimony, discussed her transition plans on numerous occasions at ARC meetings. While Ms. Jessie initially progressed to college, it is difficult to assess the success of her transition.

The hearing officer concluded that Bullitt County failed to prepare an actual written

11

transition plan.  Both the hearing officer and the ECAB considered this a blatant breach of Bullitt County's responsibility.  Such a statement elevates paperwork requirements above substance. Because the hearing officer failed to make specific findings as to the transition services denied Ms. Jessie, it is difficult to evaluate the conclusion.  The hearing officer's conclusion rests heavily upon the parents' testimony.  Many writings contained references to transition items. This testimony does not outweigh the objective evidence that Bullitt County did provide assistance in Ms. Jessie's transition.

E.

Bullitt County disagrees with other aspects of the hearing officer's decision that seem of less consequence.  Bullitt County argues that the testimony of Judy Yesowitch should be excluded pursuant to *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993) and without such testimony Ms. Jessie cannot carry her burden of proof of showing that her exit from speech therapy during her junior year was inappropriate.  The Court has reviewed the hearing officer's handling of this matter and agrees with it.  Under the circumstances, the hearing officer had the discretion to hearing the testimony and giving it such weight as was warranted.  Here, that weight appears to have been relatively slight.  The Court finds no error in the handling of this testimony.

It argues that Ms. Jessie's claim regarding vocational functioning was improper.  It disagrees with the hearing officer's decisions regarding letter reversal, extended hours and allowing Ms. Jessie to read at the hearing.  The dispute concerning the admission of vocational functioning evidence appears to be a matter of timing.  The hearing officer was within her discretion to hear the testimony of Gwinn Hahn out of order.  The issue of the "letter reversal"

12

does not amount to a separate claim.  Neither the hearing officer nor the ECAB placed importance upon it.  The same can be said with respect to Ms. Jessie's claim for an additional six days tutoring after the school year ended.  Finally, the Court agrees that the hearing officer did not abuse her discretion by allowing Ms. Jessie to read material out loud as evidence in the proceedings.

None of these issues constituted an unfairness, nor did they affect the final decision.

V.

Whether Ms. Jessie has received a "fair and appropriate" education as defined in the IDEA turns upon many pieces of evidence.  The Court has discussed some of these factors already and they present a mixed result.

The most important determinant is whether Bullitt County developed and followed an appropriate IEP for Ms. Jessie throughout her four years of high school.  The hearing officer found that for the years 1999-2000 and 2002-2003 Bullitt County failed to document or monitor her educational goal, failed to tailor her IEP to her unique needs and failed to improve her school performance.  She believed that the anecdotal method of recording progress did meet IDEA's requirement of objective goals and specific monitoring of progress.  The hearing officer concluded that because Bullitt County failed to establish objective criteria and goals, then it failed in its duty to provide a free and appropriate education.

Many of the teachers testified that they tried their best to help Ms. Jessie.  The hearing officer either disbelieved or was unpersuaded by Defendant's witnesses; she gave more credibility to Ms. Jessie and her mother than any teacher; and she focused on Bullitt County's failure to track Ms. Jessie's academic progress in a consistent and objective manner.  The

13

hearing officer thus ties Ms. Jessie's supposed lack of academic progress to the absence of compliance with IEP requirements. Both the hearing officer and the ECAB used strong language to condemn Bullitt County's lack of attention to Ms. Jessie's IEP requirements and progress.

Upon review of the evidence, the Court cannot justify the hearing officer's more specific conclusion that Ms. Jessie was denied a FAPE during her freshman year at Bullitt County. Indeed, the evidence seems overwhelming that Bullitt County did its best to meet its obligations during her freshman year. Bullitt County accepted Ms. Jessie's right to special education even though her test scores did not warrant it. Bullitt County performed a variety of preliminary assessments. During the school year, Bullitt County convened no fewer than seven ARC meetings: May 17, 1999; August 13; September 29; November 8; January 4, 2000; January 10; and March 30. In May, the district issued a progress report. The notes of these meetings are comprehensive and reflect significant effort to provide special services in a regular classroom setting. During each of these meetings, with Ms. Jessie's mother or father present, the minutes revealed that the parties reviewed her academic and social progress; adjusted placements where necessary; set goals and reviewed testing.

The rather voluminous service logs and on-going progress reports in the record show that teachers monitored the results of Ms. Jessie's efforts. The actual ARC minutes show that teachers discussed Ms. Jessie's progress and difficulties with her parents. Together, these exhibits present a body of effort that is difficult to ignore. During this time period, Bullitt County identified Ms. Jessie's need for speech services and began to provide them. Bullitt County also agreed to provide special services in math. Moreover, the district began discussions of how Ms. Jessie could make transition to higher grade levels and maintain her progress in

regular classroom settings. The Court concludes that the evidence does not support the conclusion that Ms. Jessie was denied a FAPE in 1999-2000.

Ms. Jessie's senior year presents a more complicated picture. While the monitoring of Ms. Jessie's progress generated considerable paperwork, it is difficult to determine the actual extent of follow up. For instance, even in her senior year, teachers were having difficulty implementing a consistent strategy to provide reading assistance. On the other hand, Ms. Jessie either missed school entirely or was late to school on a remarkable 57 occasions. This is the equivalent of almost 12 weeks of school. Any child would have difficulty making progress in these circumstances. Due to the ambiguity of the evidence, the Court is more inclined to defer to the educational judgment and credibility assessments of the hearing officer.

VI.

The Court has reviewed all of the Sixth Circuit cases considering IDEA appeals. These cases suggest that one must look beyond the minute details of an IEP or an ARC. Rather, courts are urged to determine broadly whether an IEP or a series of them have conferred "meaningful educational benefit gauged in relation to the potential of the child at issue." *Deal*, 392 F.3d at 862. This is not an easy task. As the Fifth Circuit said

> a disabled child's development should be measured not by his relation to the rest of the class, but rather with respect to the individual student, as declining percentile scores do not necessarily represent a lack of educational benefit, but only a child's inability to maintain the same level of academic progress achieved by his non-disabled peers.

*Houston Independent School District v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000).

Looking at all of the evidence it is easy to find areas in which Bullitt County either made mistakes, underperformed or did not strictly comply with IDEA. This Court finds evidence

15

supporting such problems in providing speech therapy, in providing the important assistive technology in reading and in the lack of consistent documentation of academic progress. The record suggests that Bullitt County never quite solved the problem of providing specialized help in the regular classroom. One can find examples of success and other examples of the help being inconsistent and improperly coordinated. The Court has a limited basis to judge the success of Bullitt County's efforts and, therefore, must defer to the hearing officer on this educational issue.

The record does show continuous attempts to keep Ms. Jessie in a regular classroom and yet provide special assistance. It reflects a significant amount of communication as well as cooperation with Ms. Jessie's parents. It reflects very little disagreement about education direction until Ms. Jessie's school was virtually completed. Finally, one cannot ignore the accomplishment of her graduation from high school within a regular classroom setting and her acceptance to college. This is persuasive evidence of a fair and appropriate education.

The Court concludes that the hearing officer's award of two years compensatory education is not supported by the evidence. The Court thus affirms the ECAB's award only in part. The strong evidence of compliance during Ms. Jessie's freshman year suggests that the hearing officer's decision was improper and arbitrary. Nevertheless, the overall evidence as supported by deference to the hearing officer on education matters does justify an award of compensatory education. This conclusion arises from certain identified failures throughout the four years, rather than from an absolute failure in a particular year.

Based upon the hearing officer's findings and those of this Court, an award of one year's compensatory education is appropriate. The parties should convene an ARC limited to developing a plan that offers Ms. Jessie speech therapy and reading comprehension using

16

assistive technologies.  Prior to convening the ARC, it might be appropriate to determine Ms.

Jessie's current level of achievement and ability. The compensatory education need not

encompass a full day or week of classes and may occur within an existing school setting.  The

plan must contain adequate goals and measurements.  The plan should include a transition plan

for later work or schooling.  In all other respects, Ms. Jessie received a fair and appropriate

education as defined in IDEA and as evidenced by her graduation and performance in school.

      The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record